UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSE MARY CASTRO,<br><br>             Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>             Defendant. | Case No. 1:20-cv-01706-CDB<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRMING THE COMMISSIONER OF SOCIAL SECURITY'S DECISION<br><br>(Docs. 18, 22) |

      Rose Mary Castro ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance and supplemental security income benefits under the Social Security Act. (Doc. 1). Plaintiff alleges disability beginning January 21, 2019. (Administrative Record ("AR") at 28). The matter currently is before the Court on the certified administrative record (Doc. 14) and the parties' briefs, which were submitted without oral argument. (Docs. 18, 22-23 ).[1]

**I.      Background**

      Plaintiff applied for benefits on January 21, 2019. (AR 16). Plaintiff's claim was initially denied on April 26, 2019, and upon reconsideration on August 29, 2019. (AR 160-64, 190-91). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and a hearing was held on May 14, 2020. (AR 41). The ALJ issued an unfavorable decision on June 26, 2020. (AR 13). The ALJ noted that Plaintiff previously filed a claim, which was adjudicated on December 12,

---

[1] Both parties have consented to the jurisdiction of a magistrate judge for all proceedings in this action, in accordance with 28 U.S.C. § 636(c)(1). (Doc. 12).

2014, but acknowledged there was new evidence in the record which rebutted the presumption of continuing disability, including evidence of additional impairments that were not previously considered. (AR 17). Plaintiff appealed the ALJ's unfavorable decision, and the Appeals Council denied her request for review. (AR 1). Thereafter, Plaintiff filed her complaint in this Court on December 14, 2020. (Doc. 1).

### A. The ALJ's decision[2]

The ALJ engaged in the five-step sequential evaluation process under 20 C.F.R. § 416.920(a). (AR 18). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 25, 2013, her alleged disability onset date. In her renewed application, Plaintiff amended her alleged onset date to January 21, 2019. (AR 20, 35). At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments (MDIs): multiple sclerosis; type two diabetes mellitus and diabetic polyneuropathy; right ankle plantar and calcaneal spurring with mild malleolus spurring; venous insufficiency; and obesity. (AR 20).

Plaintiff was diagnosed with benign essential hypertension, mixed hyperlipidemia, and reflux esophagitis. (AR 20 citing 25, 55). However, the record demonstrates regular heart rate and rhythm with normal heart sounds and no evidence of murmurs. (AR 20 citing AR 508-510, 513, 519, 707, 713, 716, 849, 854, 860, 979, 985). The ALJ further found that the record does not document organ damage due to hypertension, or significant cardiovascular or gastrointestinal complications due to hyperlipidemia and reflux esophagitis. (AR 20).

Plaintiff also was diagnosed with asthma, but the ALJ noted that in February 2019, her asthma was observed to be mild and intermittent. (AR 712). In February and April 2019, Plaintiff had only mild wheezing with no evidence of rales or rhonchi. (AR 713). The ALJ also noted that Plaintiff frequently presented with unremarkable respiratory findings. (AR 20 citing 508, 513, 520; 849, 854, 860; 979-985). Accordingly, the ALJ found the above impairments to be non-severe. (AR 21). Plaintiff was also diagnosed with an anxiety disorder, an adjustment disorder with mixed anxiety and depressed mood. The ALJ evaluated Plaintiff's alleged mental health

---

[2] The ALJ's decision is summarized herein to the extent it is relevant to the issues brought for review by Plaintiff.

2

1 impairments and found those disorders to be non-severe. (AR 23).

2 At step three, the ALJ found that Plaintiff did not have an impairment or combination of
3 impairments that met or medically equaled the severity of a listed impairment. (AR 23).
4 Specifically, the ALJ found that Plaintiff's impairments failed to meet listing 1.02 (major
5 dysfunction of a joint), 4.11 (chronic venous insufficiency), 11.09 (multiple sclerosis), and 11.14
6 (peripheral neuropathy). (AR 23). The ALJ further noted that Plaintiff's diabetes mellitus did not
7 cause organ damage such as amputation, retinopathy, coronary artery disease, peripheral vascular
8 disease, gastroparesis, nephropathy, skin infection, neuropathies, or problems with cognition,
9 depression, or anxiety. *Id.* The ALJ further considered how Plaintiff's obesity impacted the
10 severity of her impairments. *Id.* The ALJ found that Plaintiff's residual functional capacity
11 ("RFC") to be as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except: she can lift and/or carry up to 10 pounds frequently; sit for up to 6 hours total in an 8-hour workday; stand and/or walk for up to 2 hours total in an 8-hour workday; with occasional stooping, crouching, crawling, and kneeling; occasional climbing ramps and stairs; and never climbing ladders, ropes, or scaffolds. She could have no exposure to hazards including unprotected heights and dangerous moving machinery.

17 (AR 24).

18 At step four, the ALJ acknowledged Plaintiff's alleged limitations from multiple sclerosis
19 and type two diabetes, with symptoms including pain, weakness, buckling of her legs, stiffness,
20 blurred vision, excessive thirst and urination, numbness, tingling, slurred speech, swelling,
21 fatigue, and difficulty sleeping, standing, walking, sitting, lifting, squatting, bending, reaching,
22 kneeling, talking, climbing stairs, using her hands, and completing tasks. (AR 25 citing 305, 330-
23 337, 363, 367). The ALJ further noted that in February 2019, Plaintiff claimed that she was told
24 not to lift more than five pounds. (AR 25 citing AR 335). Plaintiff also stated that she could
25 walk one and a half blocks before needing to rest. (*Id.* citing AR 335). In October 2019, Plaintiff
26 further asserted that she could only walk for 10 to 15 minutes before needing to take a break
27 lasting 5 to 10 minutes. (*Id.* citing 367).

28 Plaintiff testified about the treatment for her impairments, including her administration of

insulin. (*Id*. citing AR 67, 308, 366). Plaintiff testified that she did not have treatment specifically for her multiple sclerosis in four years and attributed this lack of treatment to an ineffective neurologist. (*Id*. citing AR 59). Plaintiff testified that her pain is reduced with use of ibuprofen and baclofen. *Id*. The ALJ noted that although Plaintiff reported fatigue for her medication during the hearing, she also indicated that she did not have side effects prior to the hearing. (*Id*. citing 377, 356, 367).

Plaintiff also reported use of walker, stating that it was prescribed. (*Id*. citing 305, 336, 366). Plaintiff testified that she had a walker for about six years, asserting she takes it everywhere she goes and uses it seven or eight times a month. (AR 25 *see* AR 65-66). Plaintiff further indicated that she was hospitalized for three days in November 2018. (*Id*. citing AR 311).

The ALJ found that Plaintiff experiences some limitations from multiple sclerosis; however, her symptom testimony was not supported by the record as a whole. (AR 26). The ALJ found that although Plaintiff's diagnostic imaging studies have demonstrated multiple sclerosis, they do not document findings supporting the extent of her alleged limitations. *Id*.

The ALJ noted that in November 2018, an MRI of Plaintiff's brain revealed findings consistent with moderately severe multiple sclerosis. (AR 25 citing 744, 746). However, the ALJ found that the weight of objective examination findings did not support Plaintiff's alleged limitations. Specifically, the ALJ found that in November 2018, prior to the amended alleged onset date, Plaintiff was hospitalized due to an exacerbation of multiple sclerosis. (AR 26 citing AR 503-53). On evaluation, Plaintiff had decreased sensation and strength of her right lower extremity, an abnormal gait, hyperreflexia, and a positive Babinski reflexes of the great right toe; however, Plaintiff had intact cranial nerve testing and grip strength, as well as intact left lower extremity strength and sensation, full upper extremity strength, and normal range of motion. (*Id*. citing AR 508, 511, 520-21).

The ALJ further noted that in February and March 2019, Plaintiff presented with normal sensation, reflexes, and muscle tone of her extremities, as well as intact cranial nerve test findings with normal coordination and gait. (*Id*. citing AR 760-761, 835-36). During an evaluation with a specialist in the treatment of her multiple sclerosis in May 2019, Plaintiff asserted that she had

two falls within the past six months; however, the ALJ noted that during Plaintiff's later evaluations, including a neurology evaluation one-week after the May 2019 appointment, Plaintiff denied having two or more falls within the past 12 months. (*Id*. citing 770, 826, 890, 906, 927, 971).

The ALJ further noted an examination during which Plaintiff had a normal gait with the ability to walk 25 feet in 7.7 seconds without difficulty and without use of an assistive device. (AR 27 citing 774). Plaintiff could heel and toe walk without difficulty. *Id*. Plaintiff also presented no pronator drift, tremor, or increase of muscle tone. (AR 27 citing 773). Plaintiff also had normal sensation, reflexes, and muscle tone of her extremities, as well as normal coordination and gait. (AR 779-780).

In July 2019, Plaintiff continued to have normal sensation, reflexes, and muscle tone of all her extremities, as well as normal cranial nerve test findings with normal coordination and gait. (AR 26 citing 893). In October 2019, Plaintiff demonstrated an unsteady gait, but displayed normal coordination, sensation, and reflexes. (*Id*. citing AR 911). The ALJ also noted that in November 2019, Plaintiff displayed unremarkable findings, which included normal coordination and gait. (*Id*. citing AR 930-31). At an evaluation in February 2020, Plaintiff initially displayed decreased lower extremity sensation; however, at a neurology evaluation, Plaintiff exhibited normal sensation, reflexes, and muscle tone for all her extremities. Plaintiff further displayed intact cranial nerve test findings with normal coordination and gait. (*Id*. citing 973, 982, 985).

The ALJ found that Plaintiff had relatively limited treatment for her multiple sclerosis. (AR 27). The ALJ noted that prior to Plaintiff's alleged onset date, she was hospitalized for three days in November 2018 due to a flare of multiple sclerosis. (AR 27). Plaintiff has a history of taking medication prescribed to treat her multiple sclerosis, which includes Rebif and Copaxone. (*Id*. citing AR 477, 759). Plaintiff also reported an allergic reaction to Copaxone, noting that she only took this medication for one-or-two years after her diagnosis in 2005. (*Id*. citing AR 770). Likewise, the ALJ noted that while hospitalized in November 2018, Plaintiff reported that she did not have medical treatment specifically for multiple sclerosis in a year, and in May 2019, that Plaintiff indicated she had not been taking medication for at least three years. (*Id*. citing AR 520,

770).

The ALJ noted that although Plaintiff took medications for pain during the period following the amended alleged onset date, she did not take medication specifically for treatment of her multiple sclerosis during this period. (*Id*. citing AR 759, 769, 783, 971). Plaintiff reported that insurance could not cover a muscle relaxer; however, she reported that she was taking baclofen during the hearing. (*Id*. citing AR 902, 62). Likewise, the ALJ found that the record does not document emergency room evaluations or hospitalizations due to uncontrolled symptoms of multiple sclerosis after the amended alleged onset date. *Id*.

Relatedly, the ALJ found that Plaintiff received conservative treatment for her diabetes mellitus since her amended alleged onset date. The ALJ noted that the record does not document emergency room evaluations or hospitalizations due to uncontrolled symptoms or complications of diabetes mellitus. (AR 27).

The ALJ noted that Plaintiff experiences some limitations from her right ankle plantar and calcaneal spurring with malleolus spurring, but also observed that since her amended alleged onset date, Plaintiff frequently presented at medical evaluations with a normal gait. (AR 27 citing AR 760-768, 774, 832-836, 893, 930-31, 972). The ALJ found that Plaintiff generally received conservative treatment for this condition, and that although she had prescribed medication for pain, there is no evidence Plaintiff required right ankle surgery. Likewise, Plaintiff did not participate in physical therapy, receive injections, or use a brace. The ALJ further noted the lack of evidence of uncontrolled right ankle pain since the amended alleged onset date.

The ALJ further considered Plaintiff's need for an assistive device. Plaintiff reported using a walker for six days prior to admission to the hospital in November 2018, which was before the amended alleged onset date. (AR 27 AR 508). In April 2020, Dr. Reynaldo Garcia, M.D., Plaintiff's treating provider, prescribed Plaintiff a wheeled walker. (*Id*. citing AR 384). However, the ALJ found that the medical evidence for the period between January 21, 2019, and Dr. Garcia's prescription for a walker demonstrated that Plaintiff did not use an assistive device during evaluations. *Id*. Further, during these evaluations, Plaintiff presented with a normal gait. (AR 27 citing 759-765, 774, 832-836, 893, 930-31, 972). The ALJ found that although Plaintiff

6

displayed lower extremity strength in May 2019, an assistive device was not medically necessary, and no such device was provided for in the assessed RFC. (AR 27).

The ALJ found that Plaintiff's activities of daily living weighed against her disability allegations since despite her alleged limitations, Plaintiff prepared her husband's lunch, cared for a cat, prepared simple meals, drove short distances, shopped in stores, counted change, paid bills, and was able to use money orders and go grocery shopping. (AR 344).

The ALJ considered and addressed the various medical opinions in the record – chiefly the opinion of Dr. Reynaldo Garcia. (AR 32). Dr. Garcia is Plaintiff's treating provider and offered an opinion in April 2020. Dr. Garcia opined that Plaintiff's symptoms are severe enough to interfere with attention and concentration necessary to sustain simple, repetitive tasks. (AR 994). Dr. Garcia further opined that Plaintiff is incapable of low stress work due to her pain. (AR 994). According to Dr. Garcia, Plaintiff could sit 30 minutes and stand 20 minutes at a time for a total of less than two hours sitting and less than two hours standing and walking in an eight-hour day. (AR 994-95). Dr. Garcia also opined that that Plaintiff would need unscheduled breaks every 30 minutes, rarely carry up to 10 pounds, occasionally stoop and climb stairs, and rarely twist and crouch. (AR 32 citing AR 995). Dr. Garcia further estimated that Plaintiff would be absent from work for more than four days a month and would need an assistive advice for mobility. (*Id*. citing AR 996).

The ALJ found that Dr. Garcia's assessed limitations were not supported by his examinations. The ALJ reasoned that during multiple examinations, Dr. Garcia observed non-focal neurological findings, with normal findings on a diabetes foot examination in July 2019. (*Id*. citing 713, 716, 870, 854, 979). Further, in June, September, and December 2019, Dr. Garcia noted that Plaintiff's edema was improved. (*Id*. citing 849, 854, 979). Moreover, some of Dr. Garcia's recent treatment notes did not document gait abnormalities or use of an assistive device during office visits. (AR 32 citing 554-768, 848-85, 975-92).

The ALJ also found that Dr. Garcia's assessment was inconsistent with the record as a whole. The ALJ supported this finding by citing to instances where Plaintiff presented with

normal gait (AR 32 citing B4F/207-28;[3] 774, 832-36, 893, 930-31, 972).  Although Plaintiff had decreased lower extremity strength, it was a minimal decrease, or she had intact strength.  (*Id*. citing AR 760-61, 773-75, 832-36, 893, 910, 930-31, 972).  The ALJ further found that Dr. Garcia's assessment was inconsistent with Plaintiff's treatment since the amended alleged disability onset date.  Specifically, the ALJ noted that although Plaintiff received some treatment, she did not require emergent evaluation or hospitalization since January 21, 2019.  (*Id*. citing AR 554-992).  Likewise, Plaintiff did not need surgery for her severe impairments.  (*Id*. citing AR 554-992).  The ALJ noted that although there is evidence of Plaintiff's past use of Copaxone and Rebif, the record does not show recent use of medication for treatment of multiple sclerosis.  Furthermore, since the amended alleged onset date, Plaintiff did not participate in physical therapy, sclerotherapy, or endovenous thermal ablation for her alleged venous insufficiency.  The ALJ did not find Dr. Garcia's opinion persuasive.

At step five, the ALJ found that Plaintiff had past relevant work as a delivery driver, security guard, and fast-food worker. (AR 33).  The ALJ further found Plaintiff to be not disabled since she could work as an information clerk, order clerk, or account clerk.

## II.    Standard of Law

### A. The Disability Standard

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) and 1381(a).  An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment …"[4]  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  To achieve uniformity in the decision-making process, the Social Security regulations set out a five-

---

[3] Although the portion of Exhibit B4F referenced in the ALJ's decision is "207-28," the Court perceives this as a scrivener's error that was intended to be listed as "207-08" given that the observation of normal gate appears at page 208 of the exhibit. *See* (AR 761).

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrated by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

8

step sequential evaluation process to be used in determining if an individual is disabled. *See* 20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). Specifically, the ALJ is required to determine:

> (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe" impairments, (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform past relevant work and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.

*Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on a claimant at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 689 (9th Cir. 2009)).

Before making the step four determinations, the ALJ first must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). The RFC is the most a claimant can still do despite their limitations and represents an assessment based on all relevant evidence. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. § 416.920(e); § 416.945(a)(2). *E.g.*, *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("These regulations inform us, first, that in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe."). The RFC is not a medical opinion. 20 C.F.R. § 404.1527(d)(2). Rather, it is a legal decision that is expressly reserved to the Commissioner. 20 C.F.R. § 404.1546(c); *see Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

At step five, the burden shifts to the Commissioner to prove that Plaintiff can perform other work in the national economy given the claimant's RFC, age, education, and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). To do this, the ALJ can use either the Medical-Vocational Guidelines or rely upon the testimony of a VE. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th

Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony and for resolving ambiguities.'" *Ford*, 950 F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

### B. Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotations and citations omitted). "If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. *Stout*, 454 F.3d at 1055-56. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determinations." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (quotation and citation omitted). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396,

409 (2009).

**III.    Discussion**

Plaintiff advances two arguments for the Court's review.  First Plaintiff claims the ALJ failed to evaluate the opinion of Dr. Garcia, who is Plaintiff's treating physician.  Plaintiff also claims the ALJ erred by discounting her subjective complaints without offering clear and convincing reasons.

**A. Whether the ALJ Erred by Discounting Dr. Garcia's Opinion**

Because Plaintiff applied for SSI after March 27, 2017, the ALJ's decision was governed by the revised regulations promulgated by the Revisions to Rules Regarding the Evaluation of Medical Evidence (the "Revisions"), 82 Fed. Reg. at 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416). *See, e.g., Linda F. v. Saul*, No. 20-cv-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020) ("Because [the] plaintiff filed her applications after March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence.").  The Revisions eliminated the hierarchy of medical opinions and instead provide that the Commissioner does not defer to any medical opinions, even those from treating sources.  20 C.F.R. § 416.920c(a) (2017). Instead, under the Revisions, "'[t]he most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(a)).  Supportability means the extent that a medical source supports the medical opinion by explaining the relevant medical evidence. *Id*.; § 404.1520c(c)(1). Consistency is the extent to which a medical opinion is consistent with the evidence from other medical as well as nonmedical sources in the claim. *Id*.; 404.1520c(c).

Under the revised regulations, the medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *Id*. (citing 20 C.F.R. 404.1520c(c)(3)).  Therefore, the ALJ can consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations the medical source has performed or ordered from specialists, and whether the medical source actually examined the claimant or merely reviewed the claimant's records. *Id*. (citing § 404.1520(c)(3)(i)-

1  (v)).

2  However, the ALJ is no longer required to discuss these relationship factors and may
3  instead discuss them when "two or more medical opinions . . . about the same issue are . . .
4  equally well-supported . . . and consistent with the record . . . but are not exactly the same." *Id*. §
5  404.1520c(b)(3).

6  Plaintiff argues the ALJ erred when he found Dr. Garcia's opinion "not persuasive"
7  because his assessed limitations are not supported by his own examination findings. She further
8  asserts the ALJ's references to a July 2019 diabetic foot examination and assessments in June,
9  September, and December 2019, which noted Plaintiff's edema was improved, reflect a selective
10 representation of the record, which does not demonstrate a consideration of consistency with the
11 record as a whole. (Doc. 18 p. 10). *See Torres Aparicio v. Berryhill*, No. 1:18-cv-00777, 2019
12 WL 1594891, at *14 (E.D. Cal. Apr. 15, 2019) (finding error where ALJ rejected medical source
13 by citing to selective portions of the record)). Plaintiff argues that the examination findings
14 consistently revealed tenderness on the right medial part of her foot, tenderness on both knees,
15 edema to the bilateral legs, non-pitting edema on both legs, and tenderness with mild swelling on
16 the lower leg. (Doc. 18 p. 10 citing AR 849, 854, 860, 863, 866, 976, 979, 982, 985). Plaintiff
17 further points to an examination on February 5, 2020, which revealed diminished protective and
18 vibratory sensation on both feet and venous stasis ulcerations. (AR 982).

19 Plaintiff further argues that the ALJ erred when he found Dr. Garcia's opinion to be
20 inconsistent with the other medical evidence in the record. Plaintiff argues the reasons proffered
21 by the ALJ – including that there is no evidence of retinopathy, nephropathy, gastroparesis,
22 dermatitis, superficial varicosities, or persistent ulcerations – as well as pointing to Plaintiff's lack
23 of surgery and hospitalizations, physical treatment, and other treatment, are based entirely on
24 unrelated findings and the ALJ offered no reasons why these unobserved circumstances
25 contradict Dr. Garcia's opinion.

26 In response, the Commissioner argues that the ALJ properly addressed the supportability
27 and consistency factors when finding Dr. Garcia's opinion not persuasive. For example, the ALJ
28 found that Dr. Garcia's opinion was not supported by his own findings which showed non-focal

1  neurological findings with normal findings. (AR 32 citing AR 713, 716, 849-50, 854, 979). The
2  ALJ also cited Dr. Garcia's examination notes that Plaintiff's edema was improving (AR 32
3  citing AR 849, 854, 979); and her treatment notes did not document gait abnormalities or the use
4  of an assistive device during visits. (AR 32). The ALJ further found Dr. Garcia's assessment
5  inconsistent with the record as a whole since Plaintiff frequently presented at medical evaluations
6  with a normal gait (AR 32 citing AR 760-61, 774, 832-36, 893, 930-31, 972), had minimal
7  decrease in her extremity strength in a May 2019 examination or otherwise had intact strength
8  (AR 32 citing AR 760-61, 773-774, 832-36; 893, 910, 930-31, 972), and unremarkable MRI
9  imaging results (AR 32 citing 747). In addition, the ALJ cited to unremarkable neurological
10 findings regarding sensation, reflexes, muscle tone, cranial nerve testing, and coordination from
11 the record. (AR 32 citing AR 760-61, 832-36, 893, 910, 930-31, 972).

12 Having reviewed these arguments and the evidence cited, the Court concludes the ALJ
13 adequately addressed the supportability and consistency factors when evaluating Dr. Garcia's
14 opinion. As to supportability, as detailed above, the ALJ made a longitudinal assessment of Dr.
15 Garcia's treatment records. Although Dr. Garcia repeatedly noted that Plaintiff had swelling in
16 her lower leg, those same treatment notes also documented unremarkable neurological findings
17 showing normal or improved conditions relating to Plaintiff's diabetic foot and edema. *See, e.g.*,
18 (AR 849, 854, 860, 863).

19 As to consistency, the ALJ found that Dr. Garcia's opinion about Plaintiff's ability to
20 walk and the need to have a walker were contradicted by the medical notes of Dr. Joshi Rohini
21 and William West M.D., which were drafted leading up to and immediately prior to the time of
22 Dr. Garcia's examinations and prescription of a walker, and mostly found that Plaintiff's gait was
23 intact and noted Plaintiff was not observed using a walker during the examinations. *E.g.* (AR 760-
24 61, 774, 832-36, 893, 930-31, 972-73). The ALJ also properly discounted Dr. Garcia's opinion
25 on consistency grounds with his observations that the record did not document diabetic
26 retinopathy, nephropathy, or gastroparesis, and there was no evidence of brawny edema, nor a
27 demonstration of ongoing or frequent stasis dermatitis or superficial varicosities. AR 32.

28 In sum, the ALJ evaluated Dr. Garcia's opinion with the supportability and consistency

factors outlined in 404.1520c(a) and his findings are supported by substantial evidence.[5]

**B. Whether the ALJ Provided Clear and Convincing Reasons for Rejecting Plaintiff's Subjective Symptoms**

The ALJ is responsible for determining credibility,[6] resolving conflicts in medical testimony, and resolving ambiguities. *Andrews*, 53 F.3d at 1039. A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at *2 ("an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability"); *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.") (internal quotation marks and citation omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the first step is met and there is no evidence of malingering, "the ALJ must provide 'specific, clear and convincing reasons for' rejecting the claimant's testimony." *Treichler v.*

---

[5] Plaintiff separately argues that the ALJ failed to consider the opinion of Marlowe C. Marinas in connection with Plaintiff's RFC to perform light work. (Doc. 18 at 9). The Court perceives this to be an erroneous statement inadvertently included in Plaintiff's briefing as it does not appear Dr. Marinas was involved in this case and Plaintiff's RFC was limited to sedentary work (not light work).

[6] Social Security Ruling (SSR) 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character but an endeavor to "determine how symptoms limit [the] ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *3.

1   *Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1281).

2   *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse

3   credibility finding must be based on "clear and convincing reasons").  The clear and convincing

4   standard is "not an easy requirement to meet," as it is "'the most demanding requirement in Social

5   Security cases.'"  *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278

6   F.3d 920, 924 (9th Cir. 2002)).  The ALJ must make findings that support this conclusion, and the

7   findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the

8   claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's

9   testimony.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and internal

10  quotation marks omitted); *see Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (same).

11         The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the

12  claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits."

13  *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22,

14  2023), *F&R adopted*, 2023 WL 5109769 (E.D. Cal. Aug. 8, 2023); *see Record v. Kijakazi*, No.

15  1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if the ALJ's

16  decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,' the Court

17  will still defer to the ALJ's decision.") (quoting *Wilson v. Berryhill*, 757 Fed. Appx. 595, 597 (9th

18  Cir. 2019)).  "The standard isn't whether our court is convinced, but instead, whether the ALJ's

19  rationale is clear enough that it has the power to convince."  *Smartt v. Kijakazi*, 53 F.4th 489, 494

20  (9th Cir. 2022) (the clear and convincing standard requires an ALJ to show his work).

21         The ALJ may consider numerous factors in weighing a claimant's credibility, including

22  "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,

23  prior inconsistent statements concerning the symptoms, and other testimony by the claimant that

24  appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to

25  follow a prescribed course of treatment; and (3) the claimant's daily activities."  *Smolen*, 80 F.3d

26  at 1284.  In evaluating the credibility of symptom testimony, the ALJ must also consider the

27  factors identified in SSR 16-3P.  *Id.*[7] (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir.

28  _____
       [7] *Smolen* cites to SSR 88-13, which has since been superseded by SSR 16-3P (available at

1991)). *Accord Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). These factors include:

> (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3P, 2017 WL 5180304, at *7. *See* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted).

"The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan*, 260 F.3d at 1049. *See* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability solely because the objective medical evidence does not substantiate your statements."). Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide additional reasons for discounting the testimony. *Burch*, 400 F.3d at 680. "The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints – '[g]eneral findings are insufficient.'" *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988)).

However, the medical evidence "is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Court of Appeals has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records and concluded that contradictions with the medical records, by themselves, are enough to meet the clear and

---

2017 WL 5180304). *See Amy E.S. v. Comm'r*, No. 6:20-cv-1997-AC, 2022 WL 92939, at *9 n.4 (D. Or. Jan. 10, 2022).

1    convincing standard. *Hairston v. Saul*, 827 Fed. Appx. 772, 773 (9th Cir. 2020) (quoting
2    *Carmickle*, 533 F.3d at 1161). The Court of Appeals has also acknowledged that the ALJ is not
3    "required to believe every allegation of disabling pain, or else disability benefits would be
4    available for the asking, a result plainly contrary to" the Social Security Act. *Molina v. Astrue*,
5    674 F.3d at 1112. In essence, "the 'clear and convincing' standard requires an ALJ to show his
6    work." *Smartt*, 53 F.4th at 499.

7    Here, the ALJ acknowledged and engaged in this two-part analysis. (AR 25). The ALJ
8    found that Plaintiff's MDIs could reasonably be expected to cause the alleged symptoms, but
9    separately noted: "the claimant's statements concerning the intensity, persistence and limiting
10   effects of these symptoms are not entirely consistent with the medical evidence and other
11   evidence in the record for the reasons explained in this decision."

12   Plaintiff argues that the ALJ improperly rejected her symptom testimony on the grounds
13   that she was administered only conservative medical treatment and because there otherwise was a
14   lack of objective medical evidence to support the severity of the symptoms and conditions she
15   alleged. She asserts that the ALJ failed to identify specific testimony the ALJ deemed not
16   credible and failed to connect Plaintiff's complaints to specific medical findings that rebutted the
17   testimony. Plaintiff further argues that the ALJ did not explain how her observation at medical
18   appointments without an assistive device demonstrates any ability to work on a consistent basis.
19   (Doc. 18 at 15). Plaintiff further argues that the ALJ failed to explain how her activities of daily
20   living – including watching television, preparing simple meals, caring for a cat, shopping, driving
21   short distances, and paying bills – undermine her credibility or undercut her assertion, for
22   instance, that she is unable to sit for more than 30 minutes or walk more than 10-20 minutes
23   without a break. *Id.*

24   Turning first to the argument regarding the ALJ's reliance on Plaintiff's activities of daily
25   living, the Court notes that a claimant's activities of daily living may be used to discount her
26   subjective complaints where (1) those activities "contradict [her] other testimony" or (2) they
27   "meet the threshold for transferable work skills." *Orn*, 495 F.3d at 639. To properly discredit a
28   claimant's testimony through their daily activities, the ALJ must specifically address the daily

17

activities "and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id*. (citing *Burch*, 400 F.3d at 681). Here, the ALJ did not find that Plaintiff's activities of daily living contradicted her alleged limitations, but rather, found that "even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons." (AR 30). In the light of this finding, the Court does not deem Plaintiff's activities of daily living to be a sufficient basis on which the ALJ could discount her testimony.

However, the ALJ's reliance on one improper ground to discount a claimant's testimony may amount to harmless error if the ALJ relied on other, proper grounds to discount the testimony. *See Carmickle,* 533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (affirming a credibility finding where one of several reasons was unsupported by the record). Here, the ALJ supported his credibility determination though other means. For example, the ALJ noted that Plaintiff sought conservative treatment for her conditions, as during a hospitalization in November 2018, Plaintiff reported that she did not have medical treatment specifically for multiple sclerosis in a year, and in May 2019, she told providers that she had not been taking medication for at least three years. (AR 27 citing AR 520, 770). The ALJ further found that after her amended alleged onset date of January 21, 2019, Plaintiff's treatment for multiple sclerosis had been limited and did not document instances where her symptoms became uncontrollable. (AR 27). The ALJ further found Plaintiff generally received treatment for her right ankle plantar and calcaneal spurring which included prescriptions for pain medication, but no evidence that she received physical therapy or injections, used a brace, or had surgery in her right ankle. (AR 28).

Conservative treatment is a proper basis to find complaints of disabling symptoms not credible. *Tommasetti*, 553 F.3d at 1039-40; *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."). *See Vue Yang v. Comm'r of Soc. Sec.*, No. 2:18-cv-00443-KJN, 2019 WL 3253910, at *8 (E.D. Cal. July 19, 2019) (finding

plaintiff who received nonsteroidal anti-inflammatory medication, a walking boot, and did not require a cane constituted conservative treatment); *Gee v. Comm'r of Soc. Sec.*, No. 2:16-cv-00124-MKD, 2017 WL 3749810, at *4 (E.D. Wash. Aug. 30, 2017) (finding treatment for plantar fasciitis through anti-inflammatories, and cortisone injections to constitute conservative treatment); *Flores v. Colvin*, No. 2:14-cv-00806-JCM-GWF, 2016 WL 742693, at *5-6 (D. Nev. Oct. 26, 2015) *F&R adopted by* 2016 WL 750550 (finding reported symptoms related to calcaneal spurs in both feet to be contradicted by conservative treatment despite plaintiff attempting physical therapy, injections, and ultimately surgery in 2012, since Plaintiff sporadically sought treatment after surgery).

In sum, the ALJ properly discounted Plaintiff's credibility on the grounds that it was inconsistent with objective medical findings and Plaintiff's conservative medical treatment.

## IV.   Conclusion and Order

Accordingly, for the foregoing reasons it is ORDERED:

1. Plaintiff's motion for summary judgment (Doc. 18) is DENIED and the decision of the Commissioner of Social Security is AFFIRMED.
2. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any pending deadlines, and close this case.

IT IS SO ORDERED.

Dated:   **August 7, 2024**

UNITED STATES MAGISTRATE JUDGE

19